**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15-cr-00065-BLF-1 |
| Plaintiff, | |
| v. | **ORDER RE: MOTIONS *IN LIMINE*** |
| MEILI LIN a/k/a/ ALLY LIN & JYH-CHAU HORNG a/k/a/ HENRY HORNG, | [Re: ECF 144, 145, 146, 147, 148, 149, 150, |
| Defendants. | 151, 152, 153, 154, 155, 159, 163, 165, 167] |

Defendants Meili Lin a/k/a Ally Lin ("Ms. Lin") and Jyh-Chau Horng a/k/a Henry Horng ("Mr. Horng") (collectively, "Defendants") have been charged in a six count indictment for filing false tax returns, making false statements to the Internal Revenue Service ("IRS") during its investigation of the charged false tax returns, and making false statements contained in mortgage applications submitted to federally-insured financial institutions. *See* January 28, 2015 Indictment, ECF 1. The Court held a Final Pretrial Conference on April 5, 2018, at which time it issued oral rulings on the parties' motions *in limine*. The Court also granted Defendants' joint motion to sever Counts 1, 2, and 3 ("tax counts") from Counts 4, 5, and 6 ("financial institution counts") with trial on the tax counts to proceed first. *See* ECF 193. Jury selection in the tax fraud trial is set to begin on May 4, 2018, with trial commencing on May 7, 2018.

The Court's rulings on the parties' motions *in limine* are summarized as follows:

Government's Motion *in Limine* No. 1 & 2: GRANTED IN PART and DENIED IN PART

Government's Motion *in Limine* No. 3: GRANTED

Government's Motion *in Limine* No. 4: GRANTED

Government's Motion *in Limine* No. 5: GRANTED

Government's Motion *in Limine* No. 6: GRANTED

Government's Motion *in Limine* No. 7: GRANTED

Government's Motion *in Limine* No. 8:  GRANTED

Government's Motion *in Limine* No. 9: GRANTED

Government's Motion *in Limine* No. 10: GRANTED

Defendants' Motion *in Limine* No. 1: DEFERRED

Defendants' Motion *in Limine* No. 2: DEFERRED

Defendants' Motion *in Limine* No. 3: GRANTED

Defendants' Motion *in Limine* No. 4: GRANTED

Defendants' Motion *in Limine* No. 5 & 6: DENIED

Defendants' Motion *in Limine* No. 7: GRANTED

## GOVERNMENT'S MOTIONS *IN LIMINE*

**A.      Government's Motions *in Limine* Nos. 1 and 2 to Admit Evidence from China and Canada**

The Government's Motions *in Limine* Nos. 1 and 2 seek to introduce evidence from the People's Republic of China ("China") and Canada, consisting of documents and statements provided by the Chinese and Canadian authorities in response to requests from the United States to furnish information under the relevant bilateral tax treaties.  *See* ECF 144.  Specifically, the evidence from China relates to three Chinese companies allegedly controlled by Ms. Lin and her family: (1) Tianjin Ruiyu Metal Products Co., LTD's ("Ruiyu"); Tianjin Ruisheng Metal Products Co., LTD ("Ruisheng"), and Tianjin Ruiqiang Paper Co., LTD ("Ruiqiang").  *Id.*  The Government seeks to admit Ruiyu's Chinese tax returns; Ruiyu's ownership documents; Ruisheng's and Ruiqiang's ownership documents; and statements from the Chinese authorities

1  that accompanied these documents. *Id.* The Government also seeks to introduce Canadian bank

2  records to prove that Ms. Lin had a foreign bank account.

3       The Government argues that the foreign documents are relevant, authentic, and are not

4  barred by the general prohibition against hearsay. *Id.* However, the Government does not expect

5  to be able to call custodians of the records who provided the documents to the United States.

6  Defendants argue that these documents should not be admitted because the Government has not

7  authenticated them and they contain inadmissible hearsay. *See* ECF 171.

8               **1.**        **Authenticity**

9       The central dispute regarding admission of the foreign records involves authentication as a

10  threshold issue to admissibility. "To satisfy the requirement of authenticating or identifying an

11  item of evidence, the proponent must produce evidence sufficient to support a finding that the item

12  is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901 is not concerned with the

13  accuracy of a document's content, but rather, the rule is designed to ensure that "evidence is what

14  it purports to be." *United States v. Doyle*, 130 F.3d 523, 545 (2d Cir. 1997).

15       In order to authenticate the documents, the Government proposes that Tina B. Masuda,

16  Exchange of Information Program Manager of the IRS Large Business and International Division,

17  can provide a declaration and testify that the foreign records were received from the Chinese and

18  Canadian governments in response to treaty requests. ECF 144 at 4. Defendants object, arguing

19  that the documents from China and Canada must be authenticated, and Ms. Masuda's testimony is

20  insufficient because she does not have first-hand knowledge of the preparation of the documents.

21  *See* ECF 171 at 3. Accordingly, Defendants request that the Court exclude the foreign records

22  unless the Government can properly authenticate them.

23       The Government believes it has shown enough to authenticate these documents because

24  they are offered for exactly what they purport to be: tax returns and company ownership

25  documents sent by the Chinese government, and Canadian bank records, received in response to

26  treaty requests. ECF 144 at 4. Specifically, the Government argues that the documents can be

27  authenticated and thus are admissible under Federal Rules of Evidence 901(b)(4) and 902(3). *Id.*

28

Rule 901(b)(4) provides that evidence may be deemed authentic based on its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).  As for Rule 902(3), foreign public documents may be self-authenticating when they are "accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester—or of any foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation."  Fed. R. Evid. 902(3).

In *United States v. Perlmuter*, the Government sought to introduce evidence in the form of a certified copy of the defendant's criminal record held by the Israeli National Police.  693 F.2d 1290, 1292 (9th Cir. 1982).  The INS investigator who requested the documents received two documents from Israel: a criminal record listing four convictions suffered by the defendant in Israel between 1955 and 1964, and an identification form which purported to contain the fingerprints of the person from the criminal record—which the parties stipulated matched the defendant's fingerprints.  *Id.*  The defendant appealed his conviction after trial, arguing that these two documents from Israel should not have been admitted into evidence because they were not properly authenticated and the identification form was inadmissible hearsay.  *Id.*

The Ninth Circuit reversed, finding that the trial court abused its discretion by admitting the unauthenticated documents into evidence.  693 F.2d at 1293.  The testimony of the INS agent who received the documents "was not enough to sustain a finding of authenticity under 901(a)."  *Id.*  Moreover, Rule 902(3) was not satisfied because there was no evidence of the nature of Hertig's—the official who signed the documents—authority or position, so the documents were not properly authorized.  *Id.*  The Ninth Circuit reiterated that "[t]his circuit requires strict compliance with the authenticity rules."  *Perlmuter*, 693 F.2d at 1292.  The Federal Rules of Evidence offer "generous opportunity to authenticate by presentation of sufficient evidence to support the authenticity of a document.  Alternatively, if 902(3) is met the document is self-authenticating.  But the rules offer no third means of authentication; certainly it is not enough that the documents present an 'aura of authenticity.'"  *Perlmuter*, 693 F.2d at 1292-1293.

4

Here, the Court agrees with Defendants that *Perlmuter* is instructive at least with respect to the Chinese documents. Although couched in terms of Rules 901(b)(4) and 902(3), the Government essentially argues that the Chinese documents have an "aura of authenticity" because they look like Chinese tax returns and company ownership documents, and they were produced by the Chinese government at the request of the United States. ECF 144 at 4. As explained at the pretrial conference, the Court's unfamiliarity with the Chinese language and Chinese documents in general prevents the Court from determining that any of the Chinese documents are what they purport to be based on their appearance and characteristics. Accordingly, the Court finds that the Chinese documents are not admissible under Rule 901(b)(4).

The requirements of Rule 902(3) are also not met for any of the foreign documents. The Government concedes that the Canadian bank records are not self-authenticating under Rule 902(3) because they are not documents maintained by the Canadian government, but rather are records from a private Canadian bank. ECF 144 at 6 n.3. As for the Chinese documents, the mere fact that an unnamed Chinese government official responded to a treaty request and sent these documents to the United States does not demonstrate that the documents are "executed or attested by a person who is acting in an official capacity and who is authorized by the laws of that country to make the attestation or execution." *Perlmuter*, 693 F.2d at 1293. Without evidence of that Chinese official's authority or position, the Chinese records are not admissible under Rule 902(3) just as the Israeli documents were not admissible in *Perlmuter*.

In addition, the Government concedes that the Chinese records are not accompanied by the type of final certification described in the second requirement of Rule 902(3). *See* ECF 144 at 6. Yet the Government argues that Rule 902(3)(A) and (B) contemplate the situation presented here, and the *Perlmuter* court did not analyze this safety valve exception. Those subsections provide that: "[i]f all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy, the court may, for good cause, either: (A) order that it be treated as presumptively authentic without final certification; or (B) allow it to be evidenced by an attested summary with or without final certification." Fed. R. Evid. 902(3)(A), (B). Relying on an Eleventh Circuit case, *United States v. McGowan*, the Government argues that "good cause" exists

5

here to excuse the final certification requirement under Rule 902(3). ECF 144 at 6 (citing 552 F. App'x 950, 955 (11th Cir. 2014)). Nevertheless, the Court finds that Rule 902(3) is not satisfied. The Government has not produced any evidence supporting the authenticity of the Chinese documents or demonstrated that the records are self-authenticating, and the Court cannot conclude that they are presumptively authentic.

As explained at the pretrial conference, the Court distinguishes certain Chinese tax returns from the corporate ownership records because the Government contends that Ms. Lin's signature appears on at least one of the tax returns. Defendants argue that the signature allegedly belonging to Ms. Lin on the 2005 Ruiyu tax return does not actually resemble Ms. Lin's. ECF 171 at 2. The Court will provide the Government with the opportunity to substantiate its claim that Ms. Lin's signature appears on the Chinese tax return. Thus, the Government's motion *in limine* to admit the records from China is DENIED with the exception of the Chinese tax returns bearing Ms. Lin's signature, which the Government has the opportunity to substantiate.

The Court comes to a different conclusion regarding the authenticity and thus admissibility of the Canadian bank records. The Court finds that the Government has satisfied its burden to produce evidence authenticating the Canadian bank records under Rule 901. In light of the circumstances, particularly because the bank records received through a bilateral treaty match the account numbers on those records found in Defendants' home, the Government's evidence is sufficient to support a finding that the Canadian bank records are what the Government purports them to be. The Canadian bank records are also supported by an additional piece of evidence—a signed statement from the bank's Assistant Operations Supervisor explaining the records and indicating that they are "Certified" copies. ECF 144 at 5.

The Government has made a prima facie showing that the bank records received through a treaty bear the same account number as records found organized in files and shelves in Defendants' home. This is evidence "sufficient to support a finding" that the records are what the Government claims they are. Fed. R. Evid. 901(a). Accordingly, there is no authentication issue with respect to the Canadian bank records.

## 2.     Hearsay

Authenticated evidence must still be admissible under the other rules of evidence, such as those governing hearsay.  The Government concedes that it cannot satisfy 18 U.S.C. § 3505, but seeks to admit the foreign records under Federal Rules of Evidence 801(d)(2)(A) and 807.  ECF 144 at 7.  Defendants argue that the foreign records contain inadmissible hearsay and must be excluded.  ECF 171.

Rule 801(d)(2)(A) provides that statements of a party opponent are not hearsay.  The Government argues that the Ruiyu tax returns can be considered admissions by Ms. Lin because she was the largest shareholder of Ruiyu during the relevant years and her signature appears on the company's 2005 tax return.  ECF 144 at 7.  The Government further argues that it does not offer the remaining Chinese documents as hearsay (i.e. to prove the truth of the matters asserted therein), but to show Ms. Lin and her family's association with the Chinese companies.  *Id.*  The Government also contends that certain Canadian bank records written by Ms. Lin are direct admissions and thus admissible under Rule 801(d)(2)(A).[1]  The defense does not discuss whether the Canadian records should be considered admissions, but certainly takes issue with the signature on the 2005 Ruiyu tax return which they argue does not match Ms. Lin's. ECF 171 at 1-2.  The Court finds that the documents written by Ms. Lin are admissible pursuant to Rule 801(d)(2)(A) to the extent the Government can substantiate that Ms. Lin's signature appears on the documents or that she otherwise executed them.

The Government also argues that all of the foreign records are admissible under Rule 807.  Under the residual exception, a hearsay statement is not excluded even if the statement is not specifically covered by another hearsay exception if (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can

---

[1] According to the Government, such documents written by Ms. Lin include the account opening checklist, account agreement, certificate of deposit agreement, "Verbal / Fax / Telecopy Message Agreement," copies of Ms. Lin's credit card and passport, her signature card, and fund transfer documents. ECF 144 at 7.

1    obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules

2    and the interests of justice.  Fed. R. Evid. 807(a).  Rule 807(b) requires reasonable notice to the

3    adverse party, which the Government has satisfied by bringing this motion *in limine* over a month

4    before trial.

5        The Court finds that the Canadian records are admissible under Rule 807 based on the

6    same evidence that supports their authenticity: the records have equivalent circumstantial

7    guarantees of trustworthiness as other hearsay exceptions because the records received through the

8    treaty matches the account numbers on the bank records found in Defendants' home.  Under the

9    residual exception to hearsay, bank records are often admissible in light of "the circumstantial

10   guarantees of trustworthiness which were present . . . the distant location of the bank, and the lack

11   of any evidence in the record to suggest that the bank records are anything other than what they

12   purport to be." *Karme v. Comm'r*, 673 F.2d 1062, 1065 (9th Cir. 1982) (citing *United States v.*

13   *Friedman*, 593 F.2d 109, 118-119 (9th Cir. 1979)).  The Court agrees with the Government that

14   the Canadian bank records have equivalent circumstantial guarantees of trustworthiness as

15   evidence covered by specific hearsay exceptions.  *See* Fed. R. Evid. 807(1).  Defendants have not

16   actually called into question the reliability or authenticity of the Canadian bank records (i.e.

17   disputing that they were found in the home, or pointing to evidence that they are forged).

18   Moreover, the Court finds that Defendants' Confrontation Clause arguments are entirely

19   misplaced because the bank records are not testimonial.[2]

20       For the foregoing reasons, the Court finds that the Canadian bank records are authentic,

21   reliable, and admissible for their truth under Rules 801(d)(2)(A) and 807.  The Government's

22   motion *in limine* to admit the Canadian bank records is GRANTED.  The Government's motion *in*

23   *limine* to admit the Chinese corporate ownership documents is DENIED unless the Government is

24   able to authenticate such records prior to trial.  The Court DEFERS ruling on the admissibility of

25   the 2005 Ruiyu tax return to provide the Government with the opportunity to substantiate Ms.

26   Lin's Chinese signature.

27

28   [2] The Court discusses the relevant law pertaining to the Confrontation Clause at length below in its
     discussion of Defendants' motions *in limine* Nos. 5 and 6.

## B.    Government's Motion *in Limine* No. 3

The Government's Motion *in Limine* No. 3 seeks an order from the Court pursuant to Federal Rule of Evidence 1006 admitting the Government's summaries of evidence at trial.  ECF 145.  Rule 1006 permits the introduction of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006; *see also United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991).  The proponent of such summaries must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place, and the court may order the proponent to produce them in court.  Fed. R. Evid. 1006.  Summary evidence "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989) (internal citations omitted).  "[T]he proponent of the summary must establish that the underlying materials upon which the summary is based are admissible in evidence." *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979).  The district court has discretion to admit both the summary evidence and the underlying records into evidence.  *United States v. Anekwu*, 695 F.3d 967, 982 (9th Cir. 2012).

The Government seeks to introduce summaries of voluminous documents into evidence at trial, and requests a ruling from the Court stating that the requirements of Rule 1006 have been met for such summaries.  ECF 145.  The evidence underlying the Government's summaries consists of two categories of evidence: (1) financial records from numerous bank accounts, credit card accounts, and real estate and other financial transactions; and (2) tax records, including tax returns and other related IRS records. *Id.*  The Government represents that all of the financial records upon which the summaries will be based have already been provided to Defendants, or will be provided as soon as they are received.  *Id.* at 2.  Defendants do not object to this motion.

As described by the Government at a high level of generality, the Court is satisfied that the requirements of Rule 1006 have been met for the summaries of evidence.  The Government's Motion *in Limine* No. 3 is hereby GRANTED.

### C.     Government's Motion *in Limine* No. 4

In its fourth motion *in limine*, the Government moves the Court pursuant to Federal Rule of Evidence 801(d)(2)(A) for an order admitting the oral statements of Defendants Lin and Horng, as well as statements and questions made and posed to both Defendants.  ECF 146.

In its case-in-chief, the Government intends to introduce Defendants' oral statements as party admissions.  *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Matlock*, 415 U.S. 164, 172 (1972).  The Government represents that these oral statements by Defendants will include, for example, each of their statements made to an IRS Revenue Agent, statements made to the individuals who prepared relevant tax returns, statements made to individuals in connection with certain financial transactions, and statements made to individuals with respect to certain business transactions.  ECF 146.

The Government also plans to offer statements made *to* Defendants in its case-in-chief.  Hearsay is defined as an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  Statements that are not offered for the truth of the matter asserted, such as verbal acts, statements offered for their effect on the listener/reader, or statements to explain subsequent actions are admissible.  *See, e.g., L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935-36, amended by 313 F.3d 1093 (9th Cir. 2002); *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991).  Specifically, the Government intends to offer the questions made and posed to Defendants not for their truth, but for the purpose of establishing the "effect on listener" and each Defendants' state of mind.  ECF 146.  The Government does not oppose a limiting instruction to the jury consistent with the purpose of its offering these statements and questions made to Defendants.  *Id.* at 3.

Defendants did not file an opposition to the Government's motion in limine number 4.  However, Defendants have filed separate motions *in limine* to exclude co-defendant's statements made to an IRS Revenue Agent pursuant to *Bruton v. United States*, 391 U.S. 123, 126 (1968).  *See* ECF 163, 167.  Accordingly, the Court GRANTS the Government's Motion *in Limine* No. 4, subject to Defendants' *Bruton* objections, discussed below, as well as specific objections at trial such as hearsay and relevance.

### D.      Government's Motion *in Limine* No. 5

The Government's motion in limine number 5 seeks a ruling from the Court pursuant to Rule 801(d)(2)(A) prohibiting the defense from introducing statements of Defendants Lin or Horng through any means other than direct testimony.  ECF 147.  Although Rule 801(d)(2)(A) permits prior statements made by a defendant to be admitted as admissions by a party opponent if offered by the Government against the defendant, a defendant may not use his or her own prior statements even where the government introduces incriminating portions of them.  *See, e.g., United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005) (finding that defendant's unadmitted exculpatory statements "would have constituted inadmissible hearsay" because they were not "necessary to place the admitted statement in context."); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, but the non-self-inculpatory statements are inadmissible hearsay.") (internal citation omitted).

The Court agrees that the Federal Rules of Evidence preclude Defendants from offering their own out-of-court statements at trial through any method other than direct testimony that is subject to cross-examination.  Defendants do not object, but at the pretrial conference they requested that if the Government offers statements from Defendants then the defense should be permitted to request that the entire statement be read to the jury for context.

The Government filed a supplemental brief after the pretrial conference, arguing that the rule of "completeness" does not apply to oral statements in the Ninth Circuit.  *See* ECF 197 (citing *United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014)).  In *Liera-Morales*, the Ninth Circuit explained that Federal Rule of Evidence 106 "by its terms… applies only to written and recorded statements." *Id.* (citing *United States v. Ortega,* 203 F.3d 675, 682 (9th Cir. 2000)). The Ninth Circuit went on to hold that "[e]ven if the principle underlying Rule 106 extended to the statements at issue here," the district court did not abuse its discretion in refusing to admit portions of the defendant's post-arrest interview.  *Id.* (citing *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (holding that "if the complete statement [does] not serve to correct a misleading impression in the edited statement that is created by taking something out of context, the Rule of

Completeness will not be applied to admit the full statement.") (alteration in original)). Because the district court determined that the government's proffered statements from the interview were neither misleading nor taken out of context, the Ninth Circuit determined that considerations of fairness were not overlooked. *Liera-Morales*, 759 F.3d at 1111.

The Court agrees with the Government that Defendants may not admit any of their oral statements under the Rule of Completeness. Rather, as the Ninth Circuit observed in *Liera-Morales*: "our cases have applied the rule only to written and recorded statements." 759 F.3d at 1111 (citing *United States v. Hayat,* 710 F.3d 875, 896 (9th Cir. 2013)). The Government's Motion *in Limine* No. 5 is GRANTED. Under Rule 801(d)(2)(A), the defense is prohibited from introducing Defendants' statements through any means other than direct testimony. The defense may only move to admit portions of Defendants' *written or recorded* statements under the Rule of Completeness upon a showing that the Government created a misleading impression by offering another part of those statements out of context.

### E.    Government's Motion *in Limine* No. 6

The Government also moves to prohibit the defense from referencing punishment in front of the jury. ECF 148. "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). References to punishment include, among others, any reference to Defendants' potential sentence during all phases of the trial, and any reference to punishment in the context of the potential impact that a conviction or incarceration will have on Defendants' family. ECF 148. Defendants do not object to this motion.

The Government's Motion *in Limine* No. 6 is GRANTED. The defense is prohibited from making reference to punishment in the presence of the jury at any point during the proceedings.

### F.    Government's Motion *in Limine* No. 7

The Government moves to preclude the defense from exposing the jury to information not in evidence pursuant to Federal Rule of Evidence 103(d). ECF 149. Rule 103(d) provides that "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d). The Government therefore seeks a

ruling from the Court that defense counsel is precluded from (1) making any reference to information in opening statements that will not be introduced in evidence; (2) making speaking objections that serve no proper purpose except to present inadmissible information or argument to the jury; and (3) reading the contents of documents not in evidence to the jury. ECF 149.

Defendants do not object to this motion, but request that the motion be granted as to both sides. The Court agrees with Defendants that the order shall be mutual. Accordingly, the Government's Motion *in Limine* No. 7 is GRANTED as to both sides: no party may expose the jury to information not in evidence.

### G. Government's Motion *in Limine* No. 8

In its Motion *in Limine* No. 8, the Government moves to preclude the defense from exposing the jury to any affirmative defense that has not been properly disclosed. ECF 150. In the Ninth Circuit, a criminal defendant is not entitled to present a justification or duress defense to the jury "unless the defendant has made a prima facie showing of duress in a pre-trial offer of proof." *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008) (citing *United States v. Moreno*, 102 F.3d 994, 998 (9th Cir. 1996)). Absent such a prima facie case, evidence of duress is not relevant. *Id.* Here, the Government argues that neither Defendant Lin nor Horng has made a proffer with respect to duress or justification, and the Court should prohibit Defendants from exposing the jury to those defenses. ECF 150.

Defendants filed a joint opposition, pointing out that *Vasquez-Landaver* and *Moreno* say nothing about potential defenses other than the defense of duress. ECF 172. Accordingly, Defendants argue that the Order sought by the Government is overbroad. Defendants also represent that they will not rely on a duress defense at trial, rendering that portion of the motion *in limine* moot. *Id.*

At the pretrial conference, the Government confirmed that its motion *in limine* No. 8 was directed specifically to the defenses of duress and justification. Because Defendants represent that they do not plan to offer a duress or justification defense at trial, the Government's motion *in*

*limine* No. 8 is GRANTED.[3]

### H.    Government's Motion *in Limine* No. 9

The Government moves for a sequestration order excluding all witnesses from trial, except when testifying, with two exceptions: IRS Special Agent Maria Martinez and IRS Revenue Agent Jowei Campbell. ECF 151. Pursuant to Federal Rule of Evidence 615, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own." Fed. R. Evid. 615. However, this rule does not authorize excluding: "(a) a party who is a natural person; (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or (d) a person authorized by statute to be present." Fed. R. Evid. 615(a)-(d).

The Government argues that the exceptions described in Rule 615(b) and (c) apply to Agents Martinez and Campbell. ECF 151. Special Agent Martinez is the case agent assigned to this case and is a possible fact witness for the Government. *Id.* The Government also argues that Revenue Agent Campbell, who may testify as a summary witness, should be excluded from any sequestration order pursuant to Rule 615(c). *Id.* Accordingly, the Government seeks a sequestration order excluding all witnesses from the trial, except when testifying, with the exception of Special Agent Martinez and Revenue Agent Campbell who should be permitted to observe all portions of the trial. *Id.*

Defendants do not object in general, but the defense represents that it also has at least two individuals who may testify as summary witnesses: Jerry Cox and Richard Carl. ECF 173. Defendants request that Cox and Carl be excluded from any sequestration order for the same reasons the Government seeks to exclude its agents from the sequestration order. *Id.*

At the pretrial conference, the defense made clear that they do not presently intend to use Cox and Carl as expert witnesses, but rather these individuals are potential summary witnesses to

---

[3] As explained at the hearing, the Court's ruling on the Government's motion *in limine* No. 8 does not apply to Defendants' disclosed defense of good faith, the absence of which the Government has the burden to prove.

summarize charts, numbers and calculations. The Government stated that to the extent these defense witnesses sit through the trial and are not qualified as experts to testify, the Government would object to such persons testifying as fact witnesses having sat through the trial and not being qualified as experts.

The Court draws a sharp distinction between a summary witness—one who summarizes voluminous evidence—and an expert witness who gives an opinion about what that evidence means. At this point, without reviewing expert reports or the qualifications of defense witnesses Cox and Carl, the Court takes no position as to whether these witnesses are qualified to sit through the trial as experts. However, the issue before the Court presented on this motion *in limine* is limited to whether the defense may have two designated individuals in the courtroom to assist them with the presentation of their case. If Defendants choose to identify Cox and Carl as persons who are necessary to assist in the case during trial, they may be present in the Courtroom prior to their testimony.

The Court GRANTS the Government's motion *in limine* No. 9 and makes it mutual to both sides. Each side may designate two representatives to sit through the trial to assist them with their case. These individuals shall be excluded from the sequestration order under Rule 615. To clarify, defense may have two designated individuals total, and the Government may also have two individuals in the courtroom during trial. There is no requirement that these designated individuals qualify as experts.

### I. Government's Motion *in Limine* No. 10

In its motion *in limine* No. 10, the Government moves the Court for an order admitting into evidence bank records recovered during a search of Defendants' home. ECF 152. Specifically, the Government seeks to admit records pertaining to a CTC Bank of Canada account ending in 6306, a Taiwan Cooperative Bank account ending in 1235, and Agricultural Bank of China accounts ending in 3132 and 1818. *Id.* Defendants object, arguing that the contents of the bank records are inadmissible hearsay. ECF 174.

The Court finds that the records from foreign bank accounts are clearly relevant, as both Defendants are charged with filing a joint federal income tax return for 2006, which was false

15

because it indicated that Defendants did not control any foreign bank accounts. In addition, Defendant Horng is charged in Count 3 with making a false statement to the IRS that Defendants had no foreign bank accounts. There is also no authentication issue with respect to the bank records because, unlike the records received pursuant to the treaties discussed above, the Government is prepared to offer a witness to testify that the records were obtained from a search of Defendants' home.

Regarding Defendants' hearsay objection, the Court distinguishes its analysis of the bank records themselves from the handwritten comments on them. As for the bank records without handwritten comments, the Court finds that they are admissible for the same reasons that the Canadian bank records received through a bilateral treaty are admissible, as discussed in the Court's analysis of the Government's motion *in limine* Nos. 1 and 2. Under the residual exception to hearsay, bank records are often admissible in light of "the circumstantial guarantees of trustworthiness which were present . . . the distant location of the bank, and the lack of any evidence in the record to suggest that the bank records are anything other than what they purport to be." *Karme*, 673 F.2d at 1065. As analyzed above, the bank records themselves have circumstantial guarantees of trustworthiness and are admissible under Rule 807. For example, the reliability of the CTC Bank of Canada records is further demonstrated by the fact that they match the documents produced pursuant to a tax treaty, and the Agricultural Bank of China records pertain to an account listed on a loan application that Defendants submitted to Bank of America (US006812-15). ECF 152. Accordingly, the Court finds that the bank records that the Government seeks to admit are admissible pursuant to Federal Rule of Evidence 807.[4]

With respect to the handwritten comments on the bank records, Defendants argue that these comments are not admissible unless the Government can prove that Defendant Lin wrote them. ECF 174. The Government argues that the bank records—including the handwritten

---

[4] Because the Court finds that the bank records themselves are admissible under Rule 807, the Court does not reach the Government's argument that the documents are non-hearsay because the records are not offered to prove the truth of the statements contained therein. In any event, Defendants stated at the hearing that they have no objection to the Government admitting the bank records *not* for the truth of the matters contained therein, but challenge only admitting the contents of the records for their truth.

comments on them—are admissible under Rules 801(d)(2)(A) and (B).  ECF 152.

Rule 801 provides that certain statements are not hearsay, including a statement of a party opponent.  *See* Fed. R. Evid. 801(d)(2).  Such party-opponent statements can include direct admissions—those "made by the party in an individual or representative capacity," or adoptive admissions—statements "the party manifested that it adopted or believed to be true."  Fed. R. Evid. 801(d)(2)(A), (B).  For an adoptive admission, the Ninth Circuit applies the "possession plus" test to determine whether a statement was adopted by a party.  *Transbay Auto Serv., Inc. v. Chevron USA Inc.*, 807 F.3d 1113, 1119, 1121 (9th Cir. 2015) ("[W]e do not look to whether the party has affirmatively reviewed the document, but whether the surrounding circumstances tie the possessor and the document together in some meaningful way.") (internal citation and quotation omitted).

The Government argues that the bank records including the handwritten comments are admissible as either direct admissions or adoptive admissions, and that "possession plus" is satisfied because Defendants kept the records organized in the desk drawers and built-in shelves of their home office for several years.  ECF 152.  The Court agrees with the Government that in addition to being admissible under Rule 807, the bank records themselves are admissible under Rule 801(d)(2)(B) as adopted admissions.  However, the Court finds that the handwritten comments are not admissible as admissions of a party opponent under Rule 801(d)(2) unless the Government proffers some evidence to authenticate the comments, such as by showing that the handwriting matches the handwriting of one of the Defendants.  Simply because records are found in Defendants' files is not sufficient to show that the handwriting on those records is theirs.  The Court will allow the Government the opportunity to prove that one of the Defendants authored the comments.  If, however, the Government cannot show whose handwriting appears on the records such that a jury could find that the handwriting belongs to one of the Defendants, the comments must be redacted from the records.

For the foregoing reasons, the Government's motion *in limine* No. 10 to admit foreign bank records found in Defendants' home is GRANTED.  The bank records themselves are admissible under either Rule 807 or 801(d)(2), but absent further proof of the author of the

handwritten comments, such comments will not be admitted.

## DEFENDANTS' MOTIONS *IN LIMINE*

### A.    Joint Defense Motion *in Limine* No. 1

Defendants jointly move pursuant to Federal Rule of Evidence 404(b) to exclude evidence of other acts outside of the time period alleged in the indictment. *See* ECF 153. Because the Indictment charges Defendants with filing false tax returns for the tax years 2006 and 2007, the defense argues that financial and tax records from before or after that time period should not be admitted into evidence. *Id.* at 1 ("There is no reason for the government to admit financial documents or other testimony concerning the defendants for years other than 2006 and 2007, the years charged in the Indictment.")

The Government objects to this motion *in limine*, arguing that Defendants' request is overbroad and unsupported by law. ECF 175. As the Government points out, Count 3 charges Defendant Horng with a false statement to the IRS made in 2010. Read literally, Defendants' motion seeks to exclude that statement and supporting evidence of that Count. The Government further emphasizes that the 2007 tax return was prepared and submitted to the IRS in 2008, and Defendants provide no justification to warrant exclusion of evidence pertaining to the preparation and filing of the charged tax return. *Id.* at 2.

The Court DEFERS ruling on Defendants' joint motion *in limine* No. 1 to exclude evidence of other acts outside of the 2006-2007 time period. At this point, the Court does not know what documents are being offered or why they are being offered—i.e. as other act evidence or as evidence intrinsic to the Government's case—and the Court does not find that all documents before 2006 or after 2007 are categorically inadmissible. The Court will not impose time limits on the Government's presentation of evidence, but Defendants have preserved their 404(b) objections and may challenge documents on a case-by-case basis at trial.

### B.    Joint Defense Motion *in Limine* No. 2

Defendants also seek an Order from the Court requiring the Government to provide a proffer of authentication and identification of its exhibits, particularly including summaries, charts, and those exhibits on which the summaries and charts purport to be based. ECF 154. In other

words, the defense requests that the Government proffer how it intends to admit its exhibits, and to specify which exhibits support the conclusions contained in the Government's summary charts. *Id.* The defense further moves to exclude exhibits and summary charts unless and until the Government provides a foundation sufficient to comply with due process and the Confrontation Clause. *Id.*

The Government responded that it anticipates working with the defense to secure stipulations with respect to the authenticity and admissibility of its trial exhibits. ECF 176. The Government also takes issue with Defendants' contention that the Government has not explained which summaries it anticipates using or the evidence upon which those summaries will be based. *Id.* The Government indicates that it provided Defendants with notice of two summaries to be offered at trial, identifying the data upon which those summaries will be based, in an email to defense counsel dated March 19, 2018. *Id.* at 2 n.1.

The parties represented at the pretrial conference that they continue to exchange and review information, including an exhibit list indicating the custodians of the documents that the Government intends to introduce into evidence. In light of the ongoing developments and communication between the parties leading up to trial, the Court DEFERS ruling on Defendants' joint motion *in limine* No. 2.

### C.     Joint Defense Motion *in Limine* No. 3

Defendants jointly move pursuant to 18 U.S.C. § 3500, *et seq.*, ("*Jencks* Act") and Federal Rule of Criminal Procedure 26.2 for a Court order requiring the Government to provide each defendant and his or her counsel with any statements of the witnesses that the Government calls or intends to call to testify at trial. ECF 155. Defendants move for production of *Jencks* Act material and Rule 26.2 material, including Grand Jury testimony, as soon as possible and prior to trial. *Id.*

The Government acknowledges its ongoing obligation to provide Defendants with materials required by the *Jencks* Act and Rule 26.2. ECF 177. Regarding Grand Jury testimony, the Government previously advised the defense and confirmed at the pretrial conference that it does not intend to call any witness who testified before the Grand Jury as a witness at trial. Accordingly, there is no Grand Jury testimony to be produced. Defendants' motion for the

Government to timely comply with the *Jencks* Act and Rule 26.2 is GRANTED. The Government is hereby ORDERED to produce all *Jencks* Act material **on or before April 23, 2018,** two weeks before the first day of trial.[5]

### D.     Joint Defense Motion *in Limine* No. 4

Defendants jointly move the Court for an Order requiring the Government to disclose exculpatory material contained in the IRS Special Agent's Report ("SAR") pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). ECF 165. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 86. Defendants argue that under *Brady*, the Government must disclose Agents' reports, including SARs, that contain exculpatory or impeachment material. ECF 165 at 3 (citing *United States v. Cooper*, 173 F.3d 1192, 1202 (9th Cir. 1999); *United States v. Zuno-Arce*, 44 F.3d 1420, 1425-1426 (9th Cir. 1995)). Accordingly, Defendants request that the Court direct the Government to provide the defense with a copy of the SAR and related documents involved in its preparation. ECF 165. At the very least, Defendants argue that the Court must conduct an in camera review of the SAR and related documents in order to determine whether they contain *Brady* material that must be disclosed. *Id.* at 5 (citing *United States v. Antonakeas*, 255 F.3d 714, 726 (9th Cir. 2000)).

The Government objected to Defendants' motion on the grounds that it believes it has supplied the defense with all relevant *Brady* material. ECF 178. The Government represents that it will comply with its ongoing obligation to provide the defense with exculpatory or impeachment material subject to *Brady* as the Govertnment continues to interview witnesses and prepare for trial.

Regarding the SAR specifically, the Government argues that the SAR is an internal document prepared by an IRS Special Agent to state the IRS's position regarding the prosecution.

---

[5] As discussed at the pretrial conference, this Order does not apply to witness statements that will not be prepared until shortly before trial. For example, Agent Campbell's report will likely not be made available until days before trial.

ECF 178 at 2. As part of preparing the SAR, Special Agents generally discuss cases and their potential recommendations with IRS legal counsel. *Id.* Accordingly, courts have held that the defense does not have full access to SARs under Rule 16 for similar policy reasons to those underlying the attorney-client privilege. *Id.* (citing *United States v. Mann*, 61 F.3d 326, 331 (5th Cir. 1995); *United States v. Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989)). The Government's position is also that to the extent the SAR for this case contains exculpatory information, that information also exists in the tens-of-thousands of pages of discovery—including the appendices to the SAR—which the Government has already produced to the defense. ECF 178 at 2.

Defendants' motion for the Court to order disclosure of the *Brady* material contained in the SAR is GRANTED. At the pretrial conference, the Court scheduled an in camera hearing where it reviewed the SAR to determine if any portions of it contained *Brady* material. The review took place on April 10, 2018, and the Court ordered the Government to make a partial disclosure of certain pages of the SAR to the defense. ECF 194.

### E.   Defense Motions *in Limine* Nos. 5 and 6

Defendant Lin and Defendant Horng have each filed a motion *in limine* to exclude co-defendant statements pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). *See* ECF 163, 167. The Court considers these motions together and DENIES them for the reasons that follow.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. Amend. VI. Although the goal of the Confrontation Clause is to ensure the reliability of evidence, it is a procedural rather than a substantive guarantee. *Crawford v. Washington,* 541 U.S. 36, 61 (2004). Thus, the right to confrontation includes the right to cross-examine adverse witnesses and to present relevant evidence. *See Wood v. Alaska,* 957 F.2d 1544, 1549 (9th Cir. 1992). A statement must be "testimonial" in order for the Confrontation Clause to be applicable. *Crawford*, 541 U.S. at 50–51. There is no doubt under Supreme Court precedent that nontestimonial hearsay is outside the scope of the protection of the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 821, 828 (2006) ("It is the testimonial character of the statement that separates it from other hearsay

21

that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause"); *see also United States v. Larson*, 495 F.3d 1094, 1099 n.4 (9th Cir. 2007) (en banc). Although *Crawford* did not provide a strict definition of a "testimonial statement," the Supreme Court explained that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51.

Decades before *Crawford,* the Supreme Court held in *Bruton* that the admission of a non-testifying co-defendant's confession violated the defendant's right to cross-examination under the Confrontation Clause, even though the jury had been instructed to disregard the co-defendant's confession in determining the defendant's guilt. *Bruton*, 391 U.S. at 126. After *Crawford* and *Davis*, the *Bruton* rule is also limited to testimonial statements. Accordingly, a court must address the question of whether a statement is testimonial before it can proceed with a *Bruton* analysis. *United States v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013) ("*Bruton* espoused a prophylactic rule designed to prevent a specific type of Confrontation Clause violation. Statements that do not implicate the Confrontation Clause, *a fortiori,* do not implicate *Bruton*"); *see also United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010) ("The threshold question in every [*Bruton*] case is whether the challenged statement is testimonial. If it is not, the Confrontation Clause has no application.").

In this case, Defendants move to exclude evidence of their co-defendant's statements made to IRS Revenue Agent Deidre Garrison, which each feels will deprive the other defendant of the right to confront a non-testifying witness under *Bruton* and its progeny. ECF 163, 167.[6] There are two meetings with Agent Garrison that are relevant to these motions *in limine.* On January 13, 2010, both Defendants met with and made statements to Agent Garrison at their CPA's office to discuss the civil audit of their tax returns. ECF 179. Later that year, on September 23, 2010, Mr.

---

[6] Defendants represent that "[t]here may also be additional statements to both government officials and third parties outside this time period." ECF 163, 167. Without identification of which statements Defendants are referring to, the Court cannot consider whether the statements are testimonial or whether there is a *Bruton* issue. The Court therefore construes motions *in limine* Nos. 5 and 6 as being limited to Defendants' statements to Agent Garrison.

Horng and his CPA had another meeting at Garrison's office, which Ms. Lin did not attend, although she spoke by phone to Mr. Horng for at least part of the meeting.  *Id.*  The co-defendant statements at issue include representations such as: statements that neither Mr. Horng nor Ms. Lin owned any foreign bank accounts; a statement by Mr. Horng that a foreign account on a loan application was a lie made up by a loan agent; statements by Mr. Horng about the sale of Defendants' townhouse in New York; statements about deposits into a Chinese bank account that Ms. Lin has power of attorney on; and statements about income and loans from their company Reijin International Corporation. ECF 163 at 3.

Defendants argue that Mr. Horng's statements at both meetings and Ms. Lin's statements at the January 13, 2010 meeting must be excluded under *Bruton*.  ECF 163, 167.  Defendants argue that the joint nature of their life together—their marriage, business relationship operating Reijin together, and the filing of joint tax returns—means that even statements where Mr. Horng does not explicitly mention Ms. Lin will create a *Bruton* issue and vice versa.  According to Defendants, the  statements to Agent Garrison are testimonial, they inculpate the other defendant, and each defendant will not have the opportunity to cross-examine the other about the statements because the co-defendant will not testify at trial.  *Id.*

As a threshold matter, the Court must consider whether Defendants' statements to Agent Garrison during the civil tax audit are testimonial and thus can implicate the Confrontation Clause.  *Crawford*, 541 U.S. at 50–51.  A statement is testimonial when it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1267 (9th Cir. 2013) (citing *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 310 (2009)).

Relying on *United States v. Tuyet Thi-Bach Nguyen*, Defendants argue that the co-defendant statements to Agent Garrison implicate the other co-defendant on the tax fraud charges and must be excluded. 565 F.3d 668, 674 (9th Cir. 2009).  In *Nguyen*, the Ninth Circuit held that statements made by a co-defendant during *an interrogation* by an FDA Agent were testimonial. 565 F.3d at 674.  This holding is in line with *Crawford*, which held that statements taken by police officers in the course of interrogations are testimonial.  541 U.S. at 52.  Defendants also rely on

United States District Court
Northern District of California

*United States v. Schwartz*, but the *Bruton* issue in that case involved a co-defendant's "testimony made under oath to the bankruptcy court," which the prosecutor used against the defendant in a subsequent money laundering trial. *Id.* at 1354. The Eleventh Circuit in *Schwartz* did not even analyze the testimonial nature of the statements, which was undisputed because the statement was contained in an affidavit. *Nguyen* and *Schwartz* therefore say very little, if anything, about why the statements Defendants seek to exclude here are testimonial and implicate the Confrontation Clause.

Defendants make no showing in this case that their conversations with Agent Garrison constituted an interrogation or that their statements to her were otherwise testimonial. The Supreme Court has explained that statements are testimonial when they are "procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). Defendants do not directly address the primary purpose of their statements to Agent Garrison, which the Court must consider before it even reaches the *Bruton* analysis. *See Ohio v. Clark*, 135 S. Ct. 2173, 2180–81 (2015) ("Thus, under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause."); *see also Dargan*, 738 F.3d at 651.

Here, Agent Garrison was a civil auditor with the IRS who asked Defendants questions about their tax returns. ECF 179. The meetings were voluntary, in the sense that Defendants were not under arrest or charged with any crimes at the time. No members of law enforcement were present at either meeting, and neither Defendant confessed to civil or criminal tax liability. *Id.* Rather, Defendants answered questions and offered explanations regarding their income and assets, and described how their tax returns were prepared. *Id.* The Government further pointed out at the pretrial conference that the January 2010 meeting took place at the office of Defendants' CPA, and the September 2010 meeting, which took place at the IRS, was at the request of Defendants to come in and provide Agent Garrison with further explanations of their tax returns.

As explained above, none of the cases cited to by Defendants are factually analogous to the circumstances here. At the pretrial conference, Defendants attempted to elaborate on their theory

United States District Court
Northern District of California

1    that the statements to a civil tax auditor are testimonial in light of the history of the investigation

2    in this case.  Defendants represented that a criminal tax investigation of Defendants commenced in

3    February 2008, and then the case proceeded on and off as both a criminal and revenue

4    investigation at the IRS.  Defendants urge the Court to conclude that their conversations with

5    Agent Garrison were interrogations because the revenue investigation and criminal investigation

6    shared information with the other over the years.  Moreover, Defendants emphasize that Mr.

7    Horng asserted his Fifth Amendment right to counsel in an interview as part of the criminal

8    investigation on February 19, 2008.

9         Despite this history of the IRS investigations, Defendants still do not explain how the

10   *primary purpose* test is satisfied regarding their statements to Agent Garrison, and thus the Court

11   cannot move beyond this threshold issue.  The Court accepts that Defendants were the subjects of

12   simultaneous civil and criminal IRS investigations during the relevant time period, and even

13   credits Defendants' position that if they had not attended these meetings with Agent Garrison in

14   2010 that the IRS would have summoned them in.  Nevertheless, the Ninth Circuit is clear that the

15   "mere possibility that a record could be used in a later criminal prosecution does not render it

16   testimonial." *Rojas-Pedroza*, 716 F.3d at 1267 (citing *United States v. Orozco–Acosta,* 607 F.3d

17   1156, 1164 (9th Cir. 2010)).

18        Defendants have not shown that their statements to a civil auditor about their tax returns

19   were made "with the primary purpose of creating evidence for [the other's] prosecution," and thus

20   the Court finds that these statements do not implicate the Confrontation Clause.  *Clark*, 135 S. Ct.

21   at 2181; *see also Davis,* 547 U.S. at 828.  Rather, the primary purpose of the statements was to

22   conduct a civil audit and for Defendants to avoid civil tax liability.  The evidence is clear that the

23   meetings were informal, one of them took place at Defendants' CPA's office, Defendants

24   requested the latter meeting, and neither meeting was recorded or transcribed.  *See* ECF 179 at 4.

25   Nothing in the record indicates that Defendants were "witnesses" offering out-of-court testimony

26   to be used against the other.

27        For the foregoing reasons, the Court finds that Defendants' statements to Agent Garrison at

28   the January and September 2010 meetings were not testimonial and therefore do not trigger

United States District Court
Northern District of California

*Bruton* concerns. *Crawford*, 541 U.S. at 50–51 (holding that nontestimonial hearsay does not implicate the Confrontation Clause); *see also Davis*, 547 U.S. at 828. Defendants' motions *in limine* Nos. 5 and 6 are DENIED.

The Court briefly notes that the Confrontation Clause would not necessarily bar Defendants' statements even if the primary purpose test was satisfied. *Clark*, 135 S.Ct. at 2180-81 ("Thus, the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause"). None of Defendants' statements provided to the Court appears to be inculpatory or accusatory of the other defendant. Instead, they are part of Defendants' attempt to convince the IRS that their tax returns were accurate. These are not "powerfully incriminating extrajudicial statements of a codefendant" contemplated by *Bruton*. 391 U.S. at 135. In addition, the Court finds that Defendants' statements at the January 2010 meeting are admissible as adoptive admissions under Rule 801(d)(2)(B), and statements at the September 2010 meeting constitute authorized admissions under Rule 801(d)(2)(C). Several of these statements will also not be offered "for their truth" because the Government's position is that certain statements—for example, that Defendants did not have foreign bank accounts—were not true.

Accordingly, several grounds exist to deny Defendants' motions *in limine* Nos. 5 and 6 to exclude their co-defendant's statements to Revenue Agent Garrison. Most importantly, the statements are not testimonial and do not violate Defendants' rights to cross-examine witnesses testifying against them. *See Nguyen*, 565 F.3d at 674 ("Simply, Confrontation Clause error occurs at admission of a testimonial statement without an opportunity to cross-examine.")

### F. Joint Defense Motion *in Limine* No. 7

Finally, Defendants reserve their right to bring additional pretrial motions as they prepare for trial and continue to review documents produced by the Government. *See* ECF 159. The Government represents that it will work with the defense to resolve disputes without the Court's involvement, if possible, and will bring any unresolved disputes to the Court's attention via additional motions filed reasonably in advance of trial. ECF 180. The Court has reserved a hearing on **April 26, 2018 at 2:00 P.M.** to resolve any additional disputes that arise prior to trial.

The parties shall inform the Court on or before **April 24, 2018** if the hearing is necessary.

To the extent disputes arise during trial, the Court is available to address motions on the record at 8:30 A.M. each Court day before the jury arrives. Although a written motion is not required, a party choosing to file a written motion for a hearing the next morning is limited to one three-page motion due by 5:00 P.M. the preceding Court day. If a party intends to raise matters orally it shall inform the Court and the other parties on or before 5:00 P.M. of the intention to appear for a hearing at 8:30 A.M. the following Court day.

**IT IS SO ORDERED.**

Dated: April 23, 2018

_____
BETH LABSON FREEMAN
United States District Judge